**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **Daniel Feinberg, John McBride, Sylvester Scarborough, David Low, and Roberta Schiff individually and on behalf of all others similarly situated,**<br><br>**Plaintiff**<br><br>v.<br><br>**LG Electronics U.S.A., Inc.,**<br><br>**Defendant** | **Case No.: _____**<br><br>**JURY TRIAL DEMANDED**<br><br>**PLAINTIFFS' CLASS ACTION COMPLAINT** |

Plaintiffs Daniel Feinberg, John McBride, Sylvester Scarborough, David Low, and Roberta Schiff (hereinafter "Plaintiffs"), individually and on behalf of all other similarly situated, by and through their undersigned counsel, bring this action against Defendant LG Electronics U.S.A., Inc. (hereinafter "LG" or "Defendant") alleging, upon personal knowledge as to Plaintiffs' individual actions and upon information and belief and/or counsel's investigations as to all other matters, the following:

**PRELIMINARY STATEMENT**

1. At all times relevant hereto, Defendant designed, manufactured, distributed, and sold Class Washing Machines[1] that contain a washer valve that closes too fast (the "Valve Defect") and causes a knocking and/or banging noise (hereinafter, "Water Hammer" or "Water hammering") in the pipes that is not only annoying, but can damage the pipes or fixtures attached to them, leading to water leakage and related damage.

---

[1] "Class Washing Machines" are defined as LG washing machines that water hammer when the valve closes too fast during the water load cycle and include the following models, but not limited to: Model No. WM2501HWA,WM2650HRA, WT1701CV, WM500HVA, and other model numbers that have similar features to these identified.

1

2.      The below illustration demonstrates why the water hammering for the Valve Defect occurs when the valve closes too fast during the water load cycle:



3.      A layman's explanation of water hammering in Class Washing Machines that the above illustration depicts is as follows: "The sudden stop of water, created by the valve results in a pressure spike behind the valve which acts like a tiny explosion inside the pipe. This pressure spike will create shock waves in the water that will reverberate throughout the plumbing system, rattling and shaking pipes until it is absorbed. Normally, a sufficient pocket of air will absorb such a pressure spike, but if no pocket of air is present, expensive fixtures and appliances within the plumbing system will be damaged as they are left to absorb this pressure spike." (https://www.plumbingsupply.com/waterhammerarresters.html, lasted visited 9/9/2017).

4.      The Valve Defect in the Class Washing Machines is so prevalent that on the Home Depot webpage featuring a product it sells called, 'Mini-Resters,' several pages of LG Washing Machine owners describe their experience with water hammer issues after purchasing an LG Washing Machine and how the product attempts to fix the problem.  *See*, http://www.homedepot.com/p/Sioux-Chief-Mini-Rester-3-4-in-x-3-4-in-FHT-x-MHT-Washing-Machine-Arrester-HD660-H/202273959?MERCH=REC-_-PIPHorizontal1_rr-_-100140686-_-202273959-_-N (last visited September 8, 2017).  Indeed, a Mini-Rester is a washing machine

arrestor that can be applied to a washing machine supply line or directly to a washing machine to stop banging pipes caused by quick closing valves.  *See, id.*

5.    There are also scores of YouTube videos offering suggestions on how LG customers can fix the Valve Defect, https://www.youtube.com/watch?v=d7tBP-0mI7c, from a video dated, September 5, 2014.[2]

6.    In an effort to alleviate the banging, Plaintiffs applied one or more water hammer arrestors. But this did not solve the Valve Defect, and the water hammering continued as well as the increase pressured on the water pipes leading to their washing machines.

7.    Water hammer arrestors cost anywhere between approximately $11.00 and $17.00 each.  Additionally, the washing machine owner is required to spend time developing an attempted fix, buying the water hammer arrestor, figuring out how to install the water hammer arrestors, and then installing the water hammer arrestors.  Alternatively, the washing machine owner is required to spend time (a) hiring a plumber to develop a plan of action; and (b) waiting for the plumber to arrive and install the water hammer arresters.  Then, the washing machine owner is required to pay the plumber often at a significantly inflated price.  One Class Member complained of a plumber giving an estimate of $400.00 to fix the problem.

8.    Furthermore, though Defendant recommended at one point, but later removed from its website[3], that the water pressure be lowered to 60 PSI or less so that the Water Hammering or banging sound goes away, this alone does not solve the Valve Defect in the class washing machines.  Some class members have indicated reducing the water pressure in the house

---

[2] Despite the representations of the service person in the video, the water arresters that Plaintiffs applied did not solve the Valve Defect.

[3] *See*, Wayback Machine Snapshot at Exhibit A ("The pressure reading you get from the gauge should be 60 PSI or less. Pressures higher than 60 PSI can be the source of the noise problem. But just as important, water pressures higher than 60 PSI can cause a lot of other plumbing problems too. So if the pressure is higher than 60 PSI you need to fix that first.")

to as low as 25 PSI can solve the problem, however that is 5 PSI below the lower range of normal water pressure. *See*, generally, http://ths.gardenweb.com/discussions/2437774/lg-washer-pounding-noise.

9.     In any case, the existence of the Valve Defect / Water Hammering in the Class Washing Machines were material facts to Plaintiffs that were not disclosed to Plaintiffs prior to or at the point-of-sale.

10.    The Class Washing Machines are uniformly and inherently defective in materials, design, or workmanship because they contain the Valve Defect; to wit, the fast-closing washer valves cause a water hammering or banging that can lead to damage to water pipes.

11.    Defendant provides an express warranty against "defect in materials or workmanship under normal household use" in Class Washing Machines during the warranty period as set forth below:

WARRANTY PERIOD:

| Period | One (1) year from date of original retail purchase: | Ten (10) years from date of original retail purchase: | Lifetime from date of original retail purchase: |
|---|---|---|---|
| Scope of Warranty | Any internal /functional Parts & Labor | Drum Motor (Stator, Rotor, and Hall Sensor) | Stainless Steel Drum |
| Remark | LG will provide parts & labor to repair or replace defective parts. | Parts only. Customer will be responsible for any labor or in-home service to replace defective parts. | |

12.    Defendant has sold thousands of Class Washing Machines without disclosing to Class Members the existence of the Valve Defect. As more fully set forth herein, Defendant knew about since at least September of 2008 when the water hammer article appeared on LG's Knowledge Base Website or on or before September 24, 2009 when people started complaining on the internet about the problem. *See*, generally, http://ths.gardenweb.com/discussions/2437774/lg-washer-pounding-noise.

13.     Defendant has purposefully concealed, and continued to conceal, its knowledge of the Valve Defect to Plaintiffs and Class prior to and at the point-of-sale, during the warranty period, and through the life of the product.

14.     Defendant fails to acknowledge the Defect from consumers in the United States; however, in East Africa and Canada, it identifies a noise problem in its after sales its Help Library in Canada and East Africa.

15.     LG's Help Library, where individuals in Canada can "[f]ind helpful information for your LG product," (Available at: http://www.lg.com/ca_en/support/product-help) contains inaccurate information regarding the defect.

16.     A      search      for      the      word      "Water      Hammer"      brings      you http://www.lg.com/ca_en/search.lg?search=%22water+hammer%22, which contains a link, which takes the reader to the following help article:

Water Hammering Noise

| | |
|---|---|
| Odor | Others |

Troubleshooting     Appliance Accessories, Washer & Dryers, Washing Machines
Print     EMAIL     SHARE

**WATER HAMMER**
**Water hammering noise coming from house pipes**

**Abstract**

Several factors exacerbate water hammer and are generally traceable to inadequate system design and installation. These include:
- Improperly sized supply lines for given peak water flow velocity
- Excessive system water pressure and lack of pressure-reducing apparatus
- Inadequate strapping or securing of plumbing to structure
- Excessively long straight runs with no bends
- Lack of expansion tank or other dampening system

*Is the sound coming from the water pipes in the home?*

**If Yes:** This is known as water hammer. It is a condition caused by a sudden obstruction in the path of high pressure fluid flowing through a pipe. This noise is generated by the home's main water pipe and not the washer itself. This is also caused by high water pressure in the pipes. An easy solution for this is to adjust the water pressure by slightly closing the water supply valve behind the washer to reduce the water pressure coming through the hoses.

Water Hammer Illustration



**Troubleshooting**

- Water makes more noise as it moves faster through the pipes. Replacing the pipes with larger pipes will reduce or even eliminate the noise you can hear. But that is a huge undertaking.

- Install/replace a pressure reducing valve which involves a moderate to high level of plumbing skill, you may want to hire a plumber for this if you are not experienced with plumbing.

- Installing insulation on the pipes may help reduce the noise. Loosening straps that hold the pipes in place may also reduce the noise by allowing the pipe to slide easier as it expands and contracts.



- Turn on all the faucets in the house and then flush all the toilets, give it a few minutes to push that air out. If you know where the water supply comes into your house turn off the faucets starting with the one closest to the water supply entry point, then close them one at a time moving away from the entry point. As you come to a toilet when you are moving through the house turning off faucets, flush it again, then wait two minutes before closing the next faucet. Don't forget the faucets on the outside of the house! An air chamber will not drain properly if it is clogged. Remove its cap and ream out the accumulated scale inside the chamber. If this procedure did not help try installing a water hammer stopper.



- Water hammer is influenced by three variables, understanding these variables will help you find the source of your water hammer problem. The first variable is the length of the pipe the water is traveling through. We can't do much about the length of you pipes, assuming you can't move your house closer to the water source. But it is an important factor in creating water hammer, so it is useful to take a look at it, especially as it relates to the pipe size. For example, in some situations you can force a high rate of flow through a small pipe without problems, provided the length of the pipe is short, say, a few feet. The shorter the pipe, the smaller it can be. Knowing this will help you determine the cause.

6

Available:   http://www.lg.com/ca_en/support/product-help/CT20098067-1426622057596-others (Last Visited 8/29/2017).

17.    Compare, however, to the Help Library where individuals in the United States can "[f]ind helpful information for your LG product".   A search for "water hammer" had the following results:

Matches for Washers ⊗  "water hammer" ⊗
_____

No results were found.
Need help? Please try our online Chat , Email , or Call services.

18.    At one point in time, LG did have helpful information online regarding the problem as early as July 3, 2008. (*See* Exhibit A, a Wayback Machine Snapshot in December of 2008 indicating an original post of July 3, 2008).   *See, also,* http://lgknowledgebase.com/kb/index.php?View=entry&EntryID=4415, which is no longer available.  The last Wayback Machine snapshot was in 2013.

19.    In East Africa, LG has a Help Library Article, but fails to disclose it is the washing machine that causes the noise and specifically misrepresents the problem when it states:

"Is the sound coming from the water pipes in home? This is called water hammer. It means a sudden obstruction in the path of high pressure fluid through a pipe.
This noise is coming from customers home main pipe and not from washing machine and is caused by high water pressure in pipes. An easy way to solve of this is to adjust the water pressure by turning off the water valve in the home.

*See*,              http://www.lg.com/eastafrica/support/product-help/CT20279036-20150159492550-others.

20.     Despite the risk to Class Washing Machine Owners' pipes and homes, Defendant failed to disclose material information regarding the Valve Defect in an attempt to avoid the cost of repair and, instead, unfairly shift the cost of repair to Plaintiffs and Class Members.

21.     The Valve Defect presents a substantial risk of damage to the pipes which can result in damage to those pipes in Class Member's homes.

22.     Had Plaintiffs and Class Members known about the Valve Defect at the time of purchase, including the pipe hazard posed by the Valve Defect and the monetary cost of repair, they would not have bought the Class Washing Machines or would have paid much less for them than they did. As such, Plaintiffs and Class Members have not received the value for which they bargained when they purchased their Class Washing Machines.

23.     Defendant has not recalled the Class Washing Machines to repair the Valve Defect, have not offered all Class Members a suitable repair or replacement free of charge as required under their own warranty, and have not offered to reimburse Class Members who incurred costs relating to repair of the defect.

24.     Plaintiffs assert claims on behalf of themselves and a nationwide class under the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.* ("CFA") or, in the alternative, state law claims under other similar consumer protection statutes of other states. Plaintiffs also assert claims on behalf of themselves and a nationwide class for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* ("Magnuson-Moss Act"), and claims on behalf of themselves and a nationwide class for breach of express and implied warranty and unjust enrichment under New Jersey law, and, in the alternative, under the laws of the states of purchase.

## PARTIES

**Plaintiff Daniel Feinberg**

25.     Plaintiff Daniel Feinberg ("Feinberg" or "Plaintiff") is a citizen of the Commonwealth of Massachusetts.  On November 27, 2009, Plaintiff Feinberg purchased a new Class Washing Machine, bearing the Model No. WM2501HWA, from Home Depot in New Jersey and the Class Washing Machine was shipped to him in Massachusetts from New Jersey. Plaintiff Feinberg purchased a Class Washing Machine primarily for personal, family, and/or household purposes.  Plaintiff Feinberg's Class Washing Machine was manufactured, sold, distributed, advertised, marketed, and/or warranted by Defendant.

26.     Plaintiff Feinberg performed all regular, required maintenance on his Class Washing Machine as directed by the product manual that Defendant provided with each Class Washing Machine.  At all times, Plaintiff Feinberg used his Washing Machine in a foreseeable manner and in the manner in which said washing machines were intended to be used.

27.     Plaintiff Feinberg's Class Washing Machine experienced the water hammering problem upon first use and continues to this day.  Within the first year of ownership, Plaintiff Feinberg attempted to make a warranty claim for his Class Washing Machine, but LG refused to accept the warranty claim because LG asserted that the water hammering problem was caused by the house water pressure, and not by the Class Washing Machine.  He lowered the house water pressure from 75psi to 45psi, but it still hammered when used.  On November 27, 2012, Plaintiff spent $107.30 on multiple arrestors, and on November 30, 2012, he paid a plumber $665.25 to install a pressure regulator valve.  He spent at least ten hours trying to solve the water hammering problem with his Class Washing Machine.

**Plaintiff John McBride**

28.     Plaintiff John McBride ("McBride" or "Plaintiff") is a citizen of the Commonwealth of Pennsylvania.  On February 9, 2014, Plaintiff McBride purchased a new Class Washing Machine bearing the Model No. WM2650HRA from a Sears store in Collegeville, Pennsylvania in the amount of $476.94.  Plaintiff McBride purchased his Class Washing Machine primarily for personal, family, and/or household purposes.   Plaintiff McBride's Class Washing Machine was manufactured, sold, distributed, advertised, marketed, and/or warranted by Defendant.

29.     Plaintiff McBride performed all regular, required maintenance on his Class Washing Machine as directed by the product manual that Defendant provided with each Class Washing Machine.  At all times, Plaintiff McBride used his Washing Machine in a foreseeable manner and in the manner in which said washing machines were intended to be used.

30.     Plaintiff McBride's Class Washing Machine experienced the water hammering problem / Valve Defect upon first use and continues to this day.  Within the first year of ownership, Plaintiff McBride attempted to make a warranty claim for his Class Washing Machine, but LG refused to accept the warranty claim because LG asserted the water hammering problem was caused by the house water pressure, and not by the Class Washing Machine.  He lowered the house water pressure from 40psi to 30psi, but it still water hammered when used. Plaintiff McBride spent over $100.00 on water arrestors. He spent at least six hours trying to solve the water hammering problem with his Class Washing Machine.  The pipes connected to the Class Washing Machine with the water hammering problem / Valve Defect are leaking as a result of the Valve Defect.

**Plaintiff Sylvester Scarborough**

31.     Plaintiff Sylvester Scarborough ("Plaintiff" or "Scarborough") is a citizen of the state of Florida.  On June 24, 2016, Plaintiff purchased a new Class Washing Machine bearing Model No. WT1701CV from Brandsmart U.S.A. in Sunrise, Florida.

32.     Plaintiff Scarborough purchased his Class Washing Machine primarily for personal, family, and/or household purposes.  Plaintiff Scarborough's Class Washing Machine was manufactured, sold, distributed, advertised, marketed, and/or warranted by Defendant.

33.     Plaintiff Scarborough performed all regular, required maintenance on his Class Washing Machine as directed by the product manual that Defendant provided with each Class Washing Machine.   At all times, Plaintiff Scarborough used his Washing Machine in a foreseeable manner and in the manner in which said washing machines were intended to be used.

34.     Plaintiff Scarborough's Class Washing Machine experienced the water hammering problem / Valve Defect upon first use and continues to this day.  Within the first year of ownership, Plaintiff Scarborough has not attempted to make a warranty claim for his Class Washing Machine based on the understanding that LG is refusing to accept the warranty claim because LG asserts the water hammering problem is caused by the house water pressure, and not by the Class Washing Machine.

**Plaintiff David Low**

35.     Plaintiff David Low ("Plaintiff" or "Low") is a citizen of the state of Georgia.  On November 5, 2016, Plaintiff Low purchased a new Class Washing Machine, bearing the Model No. WM500HVA, from HH Gregg in Kennesaw, Georgia.

36.     Plaintiff David Low purchased his Class Washing Machine primarily for personal, family, and/or household purposes.  Plaintiff Low's Class Washing Machine was manufactured, sold, distributed, advertised, marketed, and/or warranted by Defendant.

37.     Plaintiff David Low performed all regular, required maintenance on his Class Washing Machine as directed by the product manual that Defendant provided with each Class Washing Machine.  At all times, Plaintiff Low used his Washing Machine in a foreseeable manner and in the manner in which said washing machines were intended to be used.

38.     Plaintiff David Low's Class Washing Machine experienced the water hammering problem upon first use and during the entirety of his use.  Within the first year of ownership, Plaintiff Low attempted to make a warranty claim for his Class Washing Machine, but LG refused to accept the warranty claim because LG asserted that the water hammering problem was caused by the house water pressure, and not by the Class Washing Machine.  He lowered the house water pressure to 45psi, and it still water hammered when used.  Plaintiff Low went to the hardware store and purchased arrestors for his Class Washing Machine.  He also spent $650.00 on plumbers in an attempt to solve the water hammering / Valve Defect, including having the plumber come out four times.  He then spent in other $1,003.00 to replace it with a new washing machine.  He spent at least ten hours trying to solve the water hammering problem with his Class Washing Machine.

**Plaintiff Roberta Schiff**

39.     Plaintiff Roberta Schiff ("Schiff" or "Plaintiff") is a citizen of the state of New York.  Plaintiff Schiff purchased a new Class Washing Machine in New York.

40.     Plaintiff Schiff purchased a Class Washing Machine primarily for personal, family, and/or household purposes.  Plaintiff's Class Washing Machine was manufactured, sold, distributed, advertised, marketed, and/or warranted by Defendant.

41.     Plaintiff Schiff performed all regular, required maintenance on Plaintiff's Class Washing Machine as directed by the product manual that Defendant provided with each Class Washing Machine.  At all times, Plaintiff Schiff used her Washing Machine in a foreseeable manner and in the manner in which said washing machine was intended to be used.

42.     Plaintiff Schiff's Class Washing Machine experienced the water hammering problem upon first use and continues to this day.  Plaintiff Schiff attempted to make a warranty claim for Plaintiff's Class Washing Machine, but LG refused to accept the warranty claim because LG asserted that the water hammering problem was an issue with the house water pressure, and not with the Class Washing Machine.  Plaintiff Schiff was damaged because she hired a plumber who attempted to fix the water hammering Valve Defect and the plumber was unable to.  The plumber also lowered the water pressure PSI to solve the water hammering problem, but this did not correct the water hammering problem.

**Defendant LG Electronics USA, Inc.**

43.     Defendant LG Electronics USA, Inc. ("LG" or "Defendant") is a Delaware corporation and maintains its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632, where it employs approximately 400 people and concentrates its base of operations.

44.     LG is a wholly-owned subsidiary of LG Korea. LG manufactures thousands of washing machines each year, a substantial portion of which are sold or offered for sale in New

Jersey. LG has sold, either directly or indirectly, thousands of its defective Class Washing Machines nationwide and in the State of New Jersey.

45.     LG's New Jersey office serves as the headquarters for its design, marketing and sales in the United States and provides all sales support. Upon information and belief, all corporate decisions regarding the Washing Machines, and the representations and acts of concealment which are the subject of this lawsuit were directed by, or emanated from, LG representatives working in New Jersey or directly reporting to superiors situated in New Jersey.

46.     In addition to the New Jersey LG personnel, the LG Korea-based personnel that are involved in matters relevant to this action routinely travel to LG's New Jersey headquarters, participate in LG's activities there and are expected to continue to travel to New Jersey.

47.     At all relevant times hereto, Defendant engaged in the business of designing, manufacturing, constructing, assembling, marketing, distributing, and selling the Class Washing Machines throughout the United States.

48.     The Class Washing Machines were defective when they left the exclusive control of Defendant, and Defendant knew the Class Washing Machines would be used without additional tests for defects. The Class Washing Machines were defective and unfit for their intended purpose and Plaintiffs and the members of the Class did not receive the goods as warranted.

49.     The Class Washing Machines were not altered in any way that affects the by Plaintiffs, the members of the Class, Defendant's distributors or other personnel.

50.     At all times herein mentioned, the acts and omissions of Defendant proximately caused the injuries and damages as herein alleged.

## JURISDICTION AND VENUE

51.     This Court has subject matter jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1332 as amended by the Class Action Fairness Act of 2005, because:

a.      the number of members of the proposed plaintiff class is greater than 100;

b.      members of the plaintiff class are citizens of a State different from any Defendant;

c.      the amount in controversy, aggregated among all individual class members, plus statutory damages and attorney's fees, exceeds $5 million.

52.     This Court has personal jurisdiction over Defendant because it maintains a principle place of business in this District, and has made sufficient contacts in this jurisdiction, including the marketing, distribution, and sale of Class Washing Machines, to wit:

a.      Defendant's headquarters and principal place of business is located in New Jersey;

b.      Defendant conducts substantial business in this District, including marketing, distribution, and sale of the Class Washing Machines; and/or

c.      Defendant's press releases emanate from Englewood Cliffs, N.J.

53.     Under 28 U.S.C. § 1391, venue lies in this District because:

a.      a substantial part of the events or omissions giving rise to the claim occurred

b.      Defendant resides in this District and each Defendant is a resident in the state in which this District is located; and/or

c.      Defendant is subject to the court's personal jurisdiction with respect to the action.

## FACTUAL BACKGROUND

### Facts Common to The Class

54.     Defendant LG holds itself out to the public as a manufacturer of safe, cutting-edge, and easy-to-use home appliances, including Class Washing Machines. Defendant is in the business of manufacturing, producing, distributing, and/or selling Class Washing Machines throughout the United States.

55.     Defendant has manufactured, produced, and/or distributed Class Washing Machines for several leading retailers in the United States, such as Home Depot, Sears and Best Buy.

56.     LG provided Plaintiffs and each owner of the Class Washing Machines with a one-year from date of original retail purchase factory warranty for "any internal / functional Parts and Labor".  Under the warranty, LG is supposed to provide parts & labor to repair or replace defective parts.  Additionally, LG provided Plaintiffs and each owner of the Class Washing Machines a ten (10) year from date of original retail purchase factory warranty for the Drum Motor (Stator, Rotor, and Hall Sensor) and a Lifetime from date of original retail purchase warranty on the Stainless Steel Drum. The Drum Motor and Stainless Steel Drum warranty covers parts only.  LG's express warranty provides coverage for defects related to materials or workmanship occurring during the warranty period. Under the one year warranty, LG was obligated, *inter alia*, to repair or replace the defective parts at no charge. Defendant has these same obligations with respect to Plaintiffs and all Class members, but has failed to satisfy these obligations.

57.     LG intended for customers to believe its uniform statements about its Class Washing Machines and to trust that its high-end Class Washing Machines were and are of first-

rate quality (compared with other machines) for washing and cleaning clothing and protecting clothing fabrics, despite LG's knowledge that these statements were misleading due to its omission of material facts about the Valve Defect: that is, the fast-closing washer valves cause water hammering during use, which can cause damage to the pipes.

58.     In conjunction with each sale, Defendant warranted that the defective Washing Machines were fit for the ordinary purpose for which such goods were used and were free from defects.

59.     Furthermore, while offering the Class Washing Machines for sale to the general public, Defendant was aware of the Valve Defect and that none of the proposed solutions it offered Plaintiffs and Class members would adequately remedy the Defects (water arrestors as described herein), and has succeeded in effectively profiting by failing and refusing to correct the defects in the Class Washing Machines.

60.     LG was in exclusive possession of this information about any potential defects, which were material to Plaintiffs and Class members, and LG had a duty, under all of the circumstances, to disclose the defects to Plaintiffs and Class members.

61.     LG has also refused, and continues to refuse, to effectively remedy the problems and defects inherent in the Class Washing Machines.

62.     In light of LG's knowledge of the problems associated with, and the serious nature of the defects at issue, LG knew, or should have known, that it was selling the Washing Machines to consumers with a value that was substantially diminished.

63.     Plaintiffs and Class members reasonably expected that the Class Washing Machines would not contain design defects that would substantially impair the Class Washing Machines performance and use.  Plaintiffs and Class members also reasonably expected that the

Machines would not require extensive and expensive repairs (or the purchase of extended or third party warranties to continuously attempt to fix problems inherent in the Washers) as a result of the defects, which defects were known to LG at the time of sale. If LG had not misrepresented and concealed material information regarding the defective nature of the Class Washing Machines, Plaintiffs and other members of the Class would not have purchased the Machines at premium prices, and on the terms offered.

64.     LG also has profited, either directly or indirectly, by concealing the nature of the defects because LG has been able to convince a large number of consumers to purchase the Class Washing Machines and to pay LG for repair services (from which LG earns a profit) to address the problems arising from the defects at issue -- even though LG has no effective remedy for the defects, and has in fact profited by failing and refusing to correct the defects in the Class Washing Machines.

65.     As a result of LG's deceptive conduct and material concealments, as well as LG's other misconduct described in this Complaint, Plaintiffs and the Class bought thousands of the Class Washing Machines and have suffered — and continue to suffer — injury as a result of the defective nature of these Class Washing Machines, and not resulting from the ordinary course of usage by Plaintiffs and Class members.

66.     As described above, LG is aware of the Valve Defect issue in this case, and has been for some time. Plaintiffs and many members of the Class have alerted Defendant to the Valve Defect and the Water Hammering by complaining to Defendant directly and/or to Defendant's authorized retailers and service persons. Indeed, many members of the Class have

posted their experiences with the defective Class Washing Machines on the Internet, including, but not limited to, postings appearing in on-line forums, e.g., *Garden Web*[4].

67.     LG failed to adequately design and/or test the Class Washing Machines to ensure that they were and are free from material defects. Before these models even reached the market, LG knew, or was reckless in not knowing, that they: (a) contained inherent defects; and/or (b) were not of merchantable quality or fit for their ordinary purpose.

68.     To this day, Defendant continues to conceal material information from users, consumers, and the public, through its customer service representatives, that: (a) the Class Washing Machines are inherently defective; and/or (b) the Class Washing Machines are not of merchantable quality or fit for their ordinary purpose.

**New Jersey's Substantive Law Applies to the Proposed Nationwide Class**

69.     New Jersey's substantive laws apply to the proposed Nationwide Class, as defined herein, because Plaintiffs properly bring this Complaint in this District.

70.     New Jersey's substantive laws may be constitutionally applied to the claims of Plaintiffs and the Nationwide Class under the Due Process Clause, 14th Amend., § 1, and the Full Faith and Credit Clause, art. IV., § 1, of the U.S. Constitution. New Jersey has significant contact, or significant aggregation of contacts, to the claims asserted by each Plaintiff and all Class members, thereby creating state interests that ensure that the choice of New Jersey state law is not arbitrary or unfair.

71.     Defendant's United States headquarters and principal place of business is located in New Jersey. LG also owns property and conducts substantial business in New Jersey, and therefore New Jersey has an interest in regulating Defendant's conduct under its laws.

---

[4] http://ths.gardenweb.com/discussions/2437774/lg-washer-pounding-noise (Last visited: September 7, 2017).

72.     Defendant's decision to reside in New Jersey and avail itself of New Jersey's laws renders the application of New Jersey law to the claims herein constitutionally permissible.

73.     New Jersey is also the location where a significant number of Class members were injured by virtue of the misconduct alleged herein.  A substantial number of members of the proposed Nationwide Class also reside in New Jersey and bought LG Class Washing Machines in New Jersey.

74.     New Jersey is also the State from which Defendant's alleged misconduct emanated. This conduct similarly injured and affected all Plaintiffs and Class members residing in the United States. For instance, Defendant's marketing efforts relating to LG's Class Washing Machines were created and orchestrated from its headquarters in New Jersey.  More specifically, New Jersey has the following significant contacts to the claims of Plaintiffs and Class members:

a.     LG's New Jersey office serves as the headquarters for its marketing and sales in the United States and provides all sales support;

b.     Upon information and belief, all corporate decisions regarding the Class Washing Machines, and the representations and acts of concealment which are the subject of this lawsuit were directed by, or emanated from, LG representatives working in New Jersey or directly reporting to superiors situated in New Jersey;

c.     Several different teams of LG employees who were involved in and are knowledgeable about the marketing and advertising of LG's Class Washing Machines, including LG's product development, marketing, training and public relations groups, are located in New Jersey and all documents related to these functions are located in New Jersey;

d.    Furthermore, upon information and belief, all customer complaints received at LG's customer call centers were and are forwarded to LG representatives working in New Jersey, who in turn dictate the scripted responses that are to be given to complaining customers; and/or

e.    In addition to the New Jersey LG personnel, the LG Korea-based personnel that are involved in matters relevant to this action routinely travel to LG's New Jersey headquarters and are expected to continue to travel to New Jersey.

75.    The application of New Jersey's laws to the Nationwide Class is also appropriate under New Jersey's choice of law rules because New Jersey has significant contacts to the claims of the Plaintiffs and the proposed Nationwide Class, and New Jersey has a greater interest in applying its laws here than any other interested state.

76.    In the alternative, the Court may apply the substantive law of the States where the named Plaintiffs reside and/or bought their Class Washing Machines:  Florida, New Jersey, New York, Georgia, and Pennsylvania.

77.    A copy of this Complaint shall be mailed to the Attorneys General, Administrators, Commissioners, or other officers, as required by law, and upon and at the time of the filing of the Complaint pursuant to: N.J.S.A. § 56:8-20.

## TOLLING OF STATUTES OF LIMITATION

78.    Any applicable statute of limitations has been tolled by Defendant's knowing and active concealment of its deceptive practices.  Plaintiffs and members of the class could not have reasonably discovered the true extent of its deceptive practices until shortly before this class action litigation was commenced.

79.     As a result of the active concealment by Defendant, any and all applicable statutes of limitations have been tolled.

## **CLASS ALLEGATIONS**

80.     Plaintiffs bring these claims individually and on behalf of all other similarly situated persons pursuant to Rule 23(a), (b)(2), (b)(3) and (c)(4) of the Federal Rules of Civil Procedure.

81.     The Nationwide Class is defined as follows:

> All persons or entities residing in the United States who purchased, not for resale, a Class Washing Machine ("Class").

82.     The State Classes are defined as:

> New Jersey: All persons or entities who purchased a Class Washing Machine for primarily personal, family or household purposes, and not for resale, in New Jersey;

> Pennsylvania: All persons or entities who purchased a Class Washing Machine for primarily personal, family or household purposes, and not for resale, in Pennsylvania;

> Florida: All persons or entities who purchased a Class Washing Machine for primarily personal, family or household purposes, and not for resale, in Florida;

> New York: All persons or entities who purchased a Class Washing Machine for primarily personal, family or household purposes, and not for resale, in New York; and

> Georgia: All persons or entities who purchased a Class Washing Machine for primarily personal, family or household purposes, and not for resale, in Georgia.

83.     Excluded from the Classes are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or Defendant's respective parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3)

Any governmental entities and any instrumentalities, subdivisions, agencies thereof; (4) any person who executes and files a timely request for exclusion from the Class; (5) any person who has had their claims in this matter finally adjudicated and/or otherwise released; (6) the legal representatives, successors and assigns of any such excluded person; (7) Counsel of record.

84.     The Class and State Class are collectively referred to as the "Classes."

85.     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes before the Court determines whether certification is appropriate.

86.     **Numerosity.  Fed. R. Civ. P. 23(a)(1).** While Plaintiffs do not know the exact number of class members, Plaintiffs believe there are (at least) thousands of members in each Class.  Undoubtedly, individual joinder in this case is impracticable.  More than one thousand class members is sufficient to satisfy numerosity under Fed. R. Civ. P. 23(a)(1).  Class Members can be easily identified through Defendant's records data base.

87.     **Commonality and Predominance.  Fed. R. Civ. P. 23(a)(2) and (b)(3)**. There are several questions of law and fact common to the claims of Plaintiffs and Members of the Classes. All of the Members of the Classes' claims are based upon the same facts and circumstances. Fed. R. Civ. P. 23(a)(3). The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual Members of the Classes. The resolution of common questions in this case will resolve the claims of Plaintiffs and the Classes.  Common questions include, but are not limited to, the following:

a.      Whether the Class Washing Machines are defective;

b.      Whether LG knew that the Class Washing Machines were and are defective;

c.      Whether LG omitted and concealed material facts from its communications and disclosures to Plaintiffs and the Classes regarding the defects inherent in the Class Washing Machines;

d.      Whether LG has engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in connection with the sale of the Class Washing Machines;

e.      Whether New Jersey law can and should be applied to the Nationwide Class;

f.      Whether LG violated various state consumer protection statutes;

g.      Whether LG breached its warranty and/or extended warranties;

h.      Whether LG breached its implied warranties;

i.      Whether LG has been unjustly enriched;

j.      Whether, as a result of LG's conduct, Plaintiffs and the Classes have suffered damages; and if so the appropriate amount thereof;

k.      Whether, as a result of LG's misconduct, Plaintiffs and the Classes are entitled to equitable relief and/or other relief, and, if so, the nature of such relief;

l.      Whether Plaintiffs and the Classes are entitled to treble damages, punitive damages, and/or other monetary relief; and/or

m.      Whether Plaintiffs and the Classes are entitled to injunctive, declaratory relief, or other equitable relief.

88.      **Typicality.  Fed. R. Civ. P. 23(a)(3)**. The claims of Plaintiffs are typical of the claims of the respective Classes.  The claims of the Plaintiffs and the respective Classes are based on the same legal theories and arise from the same unlawful and willful conduct, resulting in the same injury to the Plaintiffs and the respective Classes.  Plaintiffs and all members of the

Classes are similarly affected by Defendant's wrongful conduct and were damaged in the same way.

89.     **Adequacy.  Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate representatives of the Classes because their claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes.  Plaintiffs fall within each class definition and Plaintiffs' interests do not conflict with the interests of the Members of the Classes Plaintiffs seeks to represent.  Plaintiffs are passionate about this litigation personally and will prosecute this action vigorously for the benefit of the Members of the Classes.  Plaintiffs are represented by experienced and able attorneys from coordinated law firms.  Plaintiffs are represented by counsel who are competent and experienced in the prosecution of class action litigation, and Plaintiffs' counsel intends to prosecute this action vigorously for the benefit of the Members of the Classes. Plaintiffs and class counsel can fairly and adequately protect the interests of all of the Members of the Classes.  Neither Plaintiffs nor their counsel have any interest adverse to those of the other Members of the Classes.

90.     **Superiority.  Fed. R. Civ. P. 23(b)(3)**: Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

91.     The litigation without the classes would allow litigation claims that, in view of the expense of the litigation, may be insufficient in amount to support separate actions.  Individual litigation of each Member of the Classes' claims would be impracticable and individual litigation would be unduly burdensome to the courts.  Without a class action, the Classes would have no reasonable remedy and would continue to suffer losses, as Defendant continues to engage in the bad faith, unlawful, unfair, and deceptive conduct that is the subject of this Complaint, and Defendant would be permitted to retain the proceeds of its violations of law. Absent a class action, most of the respective Members of the Classes would find the cost of litigating their claims to be prohibitive, and will have no effective remedy.  The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

92.     **Injunctive and Declaratory Relief is Appropriate.  Fed. R. Civ. P. 23(b)(1).** The prosecution of separate actions by individual members of the classes would create a risk of:

a.      Inconsistent or varying adjudications with respect to individual members of the respective classes which would establish incompatible standards of conduct for the Defendant; and

b.      Adjudications with respect to individual members of the respective classes which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

93.     **Policies Generally Applicable to the Classes.  Fed. R. Civ. P. 23(b)(2)**. Defendant has acted or refused to act on grounds generally applicable to the classes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct

toward the members of the Classes, and making final injunctive relief appropriate with respect to each of the Classes as a whole. Defendant's practices challenged herein apply to and affect the members of the Classes uniformly, and Plaintiffs' challenge of those practices hinge on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiffs.

94. **Certification of Particular Issues.  Fed. R. Civ. P. 23(c)(4).**  Issue certification is also appropriate because the following particular issues (among others) exist that may be brought or maintained as a class action:

a. Whether Defendant LG's Class Washing Machines are defective in that they have a Valve Defect that causes water hammering;

b. Whether Defendant LG's material omission and/or misrepresentations about the existence of the Valve Defect that causes water hammering in Class Washing Machines to Plaintiffs and Class is unconscionable, unfair, deceptive, fraudulent, unethical, and/or deceptive;

c. Whether Defendant violated the consumer protection statutes of the various states; or

d. Whether Defendant breached one or more warranties with Plaintiffs and the Class Members for Class Washing Machines with the valve defect that causes water hammering.

## FIRST CAUSE OF ACTION

### VIOLATIONS OF NEW JERSEY CONSUMER FRAUD ACT
### ("CFA" 1 N.J.S.A. § 56:8-1 *et seq.*)

**[Asserted On Behalf Of The Nationwide Class Against LG, and, Alternatively, on behalf of Daniel Feinberg and the New Jersey State Class)]**

95.     Plaintiffs reallege and reincorporate by this reference all of the allegations set forth in the Complaint as though set forth herein.

96.     Plaintiffs, other members of the Class, and LG are "persons" within the meaning of the CFA.

97.     Plaintiffs and other members of the Class are "consumers" within the meaning of the CFA.

98.     Plaintiff Daniel Feinberg purchased a Class Washing Machine from a Home Depot store in New Jersey and, therefore, its CFA applies to him.

99.     At all relevant times material hereto, LG conducted trade and commerce in New Jersey and elsewhere within the meaning of the CFA.

100.     The CFA is, by its terms, a cumulative remedy, such that remedies under its provisions can be awarded in addition to those provided under separate statutory schemes.

101.     LG has engaged in deceptive practices in the sale of the defective Class Washing Machines including intentionally failing to disclose and/or concealing this known defect and risk.

102.     LG consciously omitted to disclose material facts to Plaintiffs and other members of the Class with respect to the Valve Defect in its Class Washing Machines.

103.     LG's unconscionable conduct described herein included the omission and concealment of material facts concerning the Washing Machines.

104.    LG intended that Plaintiffs and the other members of the Class rely on the acts of concealment and omissions, so that Plaintiffs and other Class members would purchase the Washing Machines.

105.    Had LG disclosed all material information regarding the Washing Machines to Plaintiffs and other members of the Class, they would not have purchased the Machines.

106.    The foregoing acts, misrepresentations, omissions and unconscionable commercial practices caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies spent to repair and replace the Washing Machines and diminution in value of the Washing Machines, and they are entitled to recover such damages, together with appropriate penalties, including treble damages, attorneys' fees and costs of suit.

107.    Application of the CFA to all Class members located throughout the country, regardless of their state of residence, is appropriate as described herein and because, *inter alia*:

a.    LG controlled and directed their nationwide sales operations and support operations from New Jersey;

b.    LG's marketing operations and decisions, including the decisions as to how to advertise, promote and sell Washing Machines, were made in New Jersey and Defendant's sales and marketing personnel all are based here;

c.    LG's principal place of business is located in New Jersey;

d.    The majority of significant employees of LG are based in New Jersey, and the LG Korea-based personnel relevant to this action routinely travel to LG's New Jersey headquarters and are expected to continue to do so; and/or

e.    The majority of significant documents of LG are located in New Jersey.

108.    The facts and circumstances of this case bestow numerous contacts with the State of New Jersey so as to create a state interest in applying the CFA to LG, thereby making application of New Jersey law to the entire Class appropriate.

## SECOND CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

**[On Behalf Of The Nationwide Class Against LG, And Alternatively, On Behalf of Each State Class Against LG Pursuant To State Law]**

109.    Plaintiffs reallege and reincorporate by this reference all of the allegations set forth in the Complaint as though set forth herein.

110.    Plaintiffs bring this cause of action on behalf of themselves and Class Members against Defendant.

111.    Defendant expressly warranted the Class Washing Machines as free of "defect in materials or workmanship under normal household use."  Such representations formed the basis of the bargain in Plaintiffs' and Class Members' decisions to purchase the Class Washing Machines.

112.    Defendant also represented that defect in materials and workmanship in Class Washing Machines that occurred during the one-year warranty period that LG would cover: "Any internal function, Parts and Labor" and that "LG will provide parts and labor to repair or replace defective parts."

113.    Defendant knew or should have known at the time of sale that the Class Washing Machines were defective in materials and workmanship; to wit, the Valve Defect.  Plaintiffs and Class Members, on the other hand, had no notice of or ability to detect the Valve Defect prior to purchasing the Class Washing Machines. For this reason, the terms of the limited warranty unreasonably favored Defendant over Plaintiffs and Class Members, and Plaintiffs' and Class

Members' acceptance of the warranty's time limitation, to the extent they are found to apply so as to exclude instances where the Valve Defect manifested itself outside of it, was neither knowing nor voluntary, thereby rendering such limitation unconscionable and ineffective.

114.    Defendant breached their express warranty by knowingly selling to Plaintiffs and Class Members the defective Class Washing Machines without informing consumers of the Valve Defect.

115.    Defendant further breached their express warranty by failing to remedy the Valve Defect and repair damage caused by the Valve Defect without charge to the consumer even though the defect was present during the express warranty period, and regardless of when it ultimately manifested.

116.    As alleged herein, before Plaintiffs and members of the Class suffered a Valve Defect and resulting damage, and while their washing machines still were under warranty, they repeatedly contacted LG regarding the issue and to request repair, but LG never repaired Plaintiff's Class Washing Machines.

117.    As a direct and proximate result of Defendant's actions, Plaintiffs and Class Members have suffered economic damages including, but not limited to, repair costs, loss of use of Class Washing Machines, substantial losses in value and resale value of the Class Washing Machines, and other damages.

118.    LG has received sufficient and timely notice of the breaches of warranty alleged herein.  Despite this notice and LG's knowledge, LG refuses to honor its warranty, even though it knows of the inherent Valve Defect in the Class Washing Machines.

119.    In addition, LG has received, upon information and belief, thousands of complaints and other notices from its customers nationwide advising it of the defects in the Washing Machines.

120.    Plaintiffs have given Defendant a reasonable opportunity to cure its failures with respect to its warranties, and Defendant failed to do so. As a consequence, any notices or demands to honor the warranties have been given, been satisfied, or further notices or demands would be futile.

121.    LG has failed to provide to Plaintiffs or the Class members, as a warranty replacement, a product that conforms to the qualities and characteristics that LG expressly warranted when it sold the Washing Machines to Plaintiffs and members of the Class.

122.    As a result of LG's breach of warranty, Plaintiffs and the Classes have suffered damages in an amount to be determined at trial.

123.    Alternatively, Plaintiffs seek to recover for LG's breach of express warranty under the substantially similar laws of the states of purchase, specifically:  Florida (F.S.A. §672.313, *et seq*.); New Jersey (N.J.S.A. § 2-313, *et seq*.); New York (New York Uniform Commercial Code §2-313, *et seq*.); Pennsylvania (13 Pa. C.S.A. §2313, *et seq*.), and/or Georgia (O.C.G.A. 11-2-313, *et seq*.).

## THIRD CAUSE OF ACTION

## BREACH OF IMPLIED WARRANTY

### [On Behalf of All Named Plaintiffs and The Nationwide Class
### Or, Alternatively, All State Classes]

124.    Plaintiffs reallege and reincorporate by this reference all of the allegations set forth in the Complaint as though set forth herein.

125.     Plaintiffs bring this cause of action on behalf of themselves and Class Members against Defendant.

126.     Plaintiffs and Class Members purchased the Class Washing Machines from Defendant by and through Defendant's authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Washing Machines when bought from a third party.

127.     At all relevant times, Defendant was the manufacturer, distributor, warrantor, and/or seller of Class Washing Machines. Defendant knew or had reason to know of the specific use for which the Class Washing Machines were purchased.

128.     At the time of purchase, Defendant provided an implied warranty to Plaintiffs and Class Members that the Class Washing Machines and their components were merchantable and fit for the ordinary purposes for which they were sold.  Alternatively, Defendant's descriptions of the Class Washing Machines became part of the bases of the bargains between consumers and Defendant, creating implied warranties that the product purchased by Plaintiffs and the Class would conform to Defendant's representations.

129.     In fact, the Class Washing Machines purchased by Plaintiffs and Class Members did not so conform.

130.     At the time of purchase, the Class Washing Machines were defective and not fit for the ordinary purpose. Under normal circumstances, and as recognized by Defendant, a properly designed and manufactured washing machine should operate without water hammering that requires the use of arrestors to mitigate or in a way that could damage plumbing and Plaintiffs' property.  Defendant cannot disclaim this implied warranty as they knowingly sold a defective product.

131.     Defendant knew or should have known the Valve Defect existed in Class Washing Machines at the time of manufacture and sale and that Class Washing Machines would cause water hammering.  Plaintiffs and Class Members, on the other hand, had no notice of or ability to detect the Valve Defect prior to purchasing the Class Washing Machines. For this reason, Defendant's limitation on the duration of the implied warranty unreasonably favored Defendant over Plaintiffs and Class Members, and Plaintiffs' and Class Members' acceptance of the warranty's time limitation was neither knowing nor voluntary, thereby rendering such limitation unconscionable and ineffective.

132.     Defendant sold to Plaintiffs and Class Members the defective Class Washing Machines without alerting them of the Valve Defect / water hammering in class washing machines.

133.     After sale, Defendant has failed to notify Plaintiffs and the Class Members of the Valve Defect.

134.     Defendant knew or should have known that a reasonable consumer exercising due diligence, including Plaintiffs and Class Members, could not have discovered the Valve Defect unless and until the defect manifested itself.

135.     Defendant failed to remedy the Valve Defect and repair damage caused by the Valve Defect without charge to the consumer.

136.     Plaintiffs and Class Members are third-party beneficiaries to a contract that gives rise to the implied warranty of merchantability, to the extent Defendant challenges such warranty based on a lack of privity. Plaintiffs and Class Members purchased the Class Washing Machines either directly from Defendant or from a network of authorized dealers who are agents of Defendant. The dealers were not intended to be the ultimate consumers of the Class Washing

Machines as is made clear by the language used in the warranty that was provided with the Class Washing Machines, and, in fact, those dealers have no rights under the warranty. Indeed, the warranty was designed for and intended to benefit the ultimate consumers only, namely, Plaintiffs and Class Members.

137.    As a direct and proximate result of Defendant's actions, Plaintiffs and Class Members have suffered economic damages including, but not limited to, repair costs, loss of use of Class Washing Machines, substantial losses in value and resale value of the Class Washing Machines, and other damages.

138.    Plaintiffs and the Class members have provided sufficient and timely notice to Defendant regarding the problems they experienced with the Class Washing Machines and, notwithstanding such notice, Defendant has failed and refused to offer Plaintiffs and the Class members an effective remedy. As a consequence, any notices or demands to honor the warranties have been given, been satisfied, or further notices or demands would be futile.

139.    In addition, Defendant has received thousands of complaints and other notices from consumers advising them of the defects associated with the Class Washing Machines.

140.    By virtue of the conduct described herein, Defendant breached the implied warranty of merchantability.

141.    Plaintiffs and the Class members have been damaged as a direct and proximate result of LG's breach of the implied warranty.

142.    Alternatively, Plaintiffs seek to recover for LG's breach of implied warranty, breach of the warranty under the Magnuson-Moss Warranty Act, 15 U.S.C. §2301, 2301(7), 2310, *et seq.* and the substantially similar laws of the states of purchase, specifically: New Jersey (N.J.S.A. 12A:2-314, *et seq.*); New York (New York Uniform Commercial Code §2-314, *et*

*seq*.); and/or Pennsylvania (13 Pa. C.S.A. §2314, *et seq*.); Georgia (O.C.G.A. § 11-2-314, *et seq*.); and Florida (F.S.A. §672.314, *et seq*.).

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY FEDERAL ACT
### 15 U.S.C. § 2301, *ET SEQ*.

### [On Behalf Of All Named Plaintiffs And The Nationwide Class
### Or, Alternatively, All State Classes]

143.    Plaintiffs reallege and reincorporate by this reference all of the allegations set forth in the Complaint as though set forth herein.

144.    Plaintiffs bring this cause of action, on behalf of themselves and Class Members, against Defendant.

145.    The Class Washing Machines are consumer products as defined in 15 U.S.C. § 2301(6).

146.    Plaintiffs and Class Members are consumers as defined in 15 U.S.C. § 2301(3).

147.    Defendant is a supplier and warrantor as defined in 15 U.S.C. §2301(4)(5).

148.    In its capacity as a warrantor, and by the conduct described herein, any attempt by Defendant to limit the express warranties in a manner that would exclude coverage of the defective Class Washing Machines is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Class Washing Machines is null and void.

149.    All jurisdictional prerequisites have been satisfied.

150.    By Defendant's conduct as described herein, including Defendant's knowledge of the defective Class Washing Machines and its action, and inaction, in the face of that knowledge, Defendant has failed to comply with its obligations under its written and implied promises, warranties, and representations.

151.    Plaintiffs have given Defendant a reasonable opportunity to cure its failures with respect to its warranties, and Defendant failed to do so. As a consequence, any notices or demands to honor the warranties have been given, been satisfied, or further notices or demands would be futile.

152.    By reason of Defendant's breach of its implied and express warranties that the Class Washing Machines were reliable, and free from material defects, and that Defendant would repair any such defects without cost to Class Members, Defendant has violated the rights of Plaintiffs and Class Members.

153.    As a direct and proximate result of Defendant's actions, Plaintiffs and Class Members have suffered economic damages including, but not limited to, repair costs, loss of use of Class Washing Machines, substantial losses in value and resale value of the Class Washing Machines, and other damages.

**FIFTH CAUSE OF ACTION**

**UNJUST ENRICHMENT**

**[Asserted On Behalf Of The Nationwide Class Against LG, and Alternatively, On Behalf of Each State Class Against LG Pursuant To State Law]**

154.    Plaintiffs reallege and reincorporate by this reference all of the allegations set forth in the Complaint as though set forth herein.

155.    In the alternative, LG has been unjustly enriched by the purchases of the Class Washing Machines by Plaintiffs and the Class members.

156.    Plaintiffs seek to recover for LG's unjust enrichment under the law of the State of New Jersey.

157.    Plaintiffs and the Class members unknowingly conferred a benefit on LG of which LG had knowledge since LG was aware of the defective nature of the Class Washing

Machines as described herein, but failed to disclose this knowledge and misled Plaintiffs and the Class members regarding the nature and quality of the Washing Machines while profiting from this deception.

158.    The circumstances are such that it would be inequitable, unconscionable and unjust to permit LG to retain the benefit of these profits that it unfairly has obtained from Plaintiffs and the Class members.

159.    Plaintiffs and the Class Members, having been damaged by LG's conduct, are entitled to recover or recoup damages as a result of the unjust enrichment of LG to their detriment.

160.    Alternatively, Plaintiffs and the Class members seek to recover for LG's unjust enrichment under the substantially similar laws of the states of purchase, specifically: Florida, Massachusetts, New Jersey, and/or Pennsylvania.

## SIXTH CAUSE OF ACTION

**VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
FLA. STAT. §§ 501.201 *et seq.*

**[On Behalf of Plaintiff Sylvester Scarborough and the Florida State Class]**

161.    Plaintiffs reallege and reincorporate by this reference all of the allegations set forth in the Complaint as though set forth herein.

162.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") broadly prohibits "unfair methods of competition, unconscionable acts or practices" and "unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

163.    A primary purpose of the FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or

unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."
§ 501.202(2), Fla. Stat. (2003).

164.    Class Washing Machines were sold in "trade or commerce" as defined by the
FDUTPA. Fla. Stat. § 501.203(8).

165.    Plaintiff Scarborough is permitted to bring this private action under the FDUTPA
pursuant to Florida Statute § 501.211(1)-(2) because Plaintiff Scarborough is a "person who has
suffered a loss as a result of a violation" of FDUTPA and, as a result, may bring an action for
declaratory and injunctive relief, and/or to recover "actual damages, plus attorney's fees and
court costs." Fla. Stat. § 501.211(1)-(2). Plaintiff Scarborough's maintenance of this action and
any injunctive relief will benefit the public. Plaintiff Scarborough brings this cause of action on
behalf of himself and a class of similarly situated Florida residents, against Defendant.

166.    In their dealings with Plaintiff Scarborough, Defendant omitted material
information that the FDUTPA requires them to disclose, including the following:

a.    That the Class Washing Machines have a Valve Defect, which presents as loud
water hammering when used and which caused Plaintiff Scarborough to pay out-
of-pocket for plumbers and supplies to fix the Valve Defect;

b.    That the Class Washing Machines are incapable of being used safely as the Valve
Defect can manifest itself at any time and could result in pipe bursting and related
damage;

c.    That the Class Washing Machines are unsafe due to the Valve Defect; and/or

d.    That the Class Washing Machines were not of a particular standard and are,
therefore, unsafe due to the Valve Defect.

167.    Defendant was obligated to disclose this material information because they had exclusive knowledge of the Valve Defect that was unavailable to the general public, and in order to clarify their affirmative misstatements concerning the quality of the Class Washing Machines.

168.    Defendant's material omissions were made with the intent that Plaintiff Scarborough and the Florida Class members rely thereon in connection with their purchase of the Class Washing Machines.

169.    Defendant also deceived Plaintiff Scarborough in order to misappropriate money from her.

170.    Defendant, through pre-product developmental testing, warranty claims submitted to their network of dealers, repair data and customer complaints monitored by Defendant, knew, or, in the exercise of reasonable diligence, should have known, that Class Washing Machines were defectively designed or manufactured, posed a safety risk, and were not suitable for their intended and/or expected use.

171.    Plaintiff Scarborough and the Florida Class Members reasonably expected that the Class Washing Machines would not be defectively designed such that the Class Washing Machine would fail during normal use and increase the risk of burst pipes and related damage. Further, Plaintiff Scarborough and the Florida Class Members reasonably expected Defendant to honor their warranty obligations as represented to them at the time they purchased their Class Washing Machines.

172.    A causal nexus exists between Defendant's unlawful conduct and the damages suffered by Plaintiff Scarborough. But for Defendant's misrepresentations, omissions and deceptive practices, Plaintiff Scarborough would not have purchased his Class Washing Machine or would have paid substantially less for it.

173.    As a direct result of the Valve Defect, the value of Plaintiff Scarborough's washing machine in the condition in which it was delivered was less than the value it would have had in the condition in which it should have been delivered.

### SEVENTH CAUSE OF ACTION

**VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES
AND CONSUMER PROTECTION LAW**

**73 PA. C.S.A. §§ 201-1, *ET SEQ.***

**[On Behalf of Plaintiff John McBride and the Pennsylvania State Class]**

174.    Plaintiffs reallege and reincorporate by this reference all of the allegations set forth in the Complaint as though set forth herein.

175.    Defendant's conduct, as described herein, took place within the Commonwealth of Pennsylvania and constitute unfair methods of competition or unfair or deceptive acts or practices in violation of §§ 201-2(4)(v), (vii), (xiv), and (xxi) of the UTPCPL.

176.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") applies to the claims of all Class Members who purchased Class Washing Machines in Pennsylvania (Pennsylvania Class) because the unlawful conduct at issue occurred within the Commonwealth of Pennsylvania.

177.    Plaintiff McBride and other Pennsylvania Class Members who purchased Class Washing Machines in Pennsylvania for personal, family or household purposes are deemed consumers who purchased qualifying goods within the meaning of §§ 201-2(2) and 201-9.2 of the UTPCPL.

178.    Defendant used and employed unfair methods of competition and/or unfair or deceptive acts or practices within the meaning of §§ 201-2 and 201-3 of the UTPCPL. Such

41

unfair methods of competition and/or unfair or deceptive acts or practices include, but are not limited to § 201-2(4)(v), (vii), (xiv), and (xxi) of the UTPCPL.

179.   Section 201-2(4)(v) of the UTPCPL provides that it shall be unlawful in the sale of goods to represent that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have.

180.    Section 201-2(4)(vii) of the UTPCLPL provides that it shall be unlawful in the sale of goods to represent that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another.

181.   Section 201-2(4)(xxi) of the UTPCPL further provides that it shall be unlawful in the sale of goods to engage in any other deceptive conduct which creates a likelihood of confusion or of misunderstanding.

182.   Here, Defendant affirmatively misrepresented that the Class Washing Machines were free from defect in materials or workmanship as contemplated by the Limited Warranty.

183.   Defendant also omitted material information concerning the quality of Class Washing Machines that the UTPCPL requires them to disclose, both in pre- and post-purchase dealings with Plaintiff McBride. Defendant was obligated to disclose the Valve Defect's existence because such a defect in the Class Washing Machines constitutes a material fact. Moreover, Defendant, by virtue of their position as manufacturers of Class Washing Machines, had exclusive knowledge of the Valve Defect that was unavailable to the general public, and therefore were obligated under the UTPCPL to disclose these facts to Plaintiff McBride and Class Members.

184.    Defendant knew or should have known that the Class Washing Machines contained the Valve Defect, would create a loud banging noise, presented a whole host of issues including those of safety and otherwise were not as warranted and represented by Defendant.

185.    Defendant's misrepresentations, concealment, omissions and other deceptive conduct were likely to deceive and cause misunderstanding and/or in fact caused Plaintiff McBride and other members of the Pennsylvania Class to be deceived about the long-term integrity of their Class Washing Machine, and that such washing machine would be backed by both express and implied warranties that would in fact be honored by Defendant.

186.    Defendant intended that Plaintiff McBride and the Pennsylvania Class would rely on their representations and warranties regarding the long-term integrity of Class Washing Machines.

187.    As a direct result, Plaintiff McBride and other Pennsylvania Class Members reasonably relied on Defendant's misrepresentations and omissions, and expected that the Class Washing Machines would not be defectively designed, such that the Class Washing Machine would fail during normal use and increase the risk of burst pipes and related damage. Further, Plaintiff McBride and Pennsylvania Class Members reasonably expected Defendant to honor their warranty obligations as represented to them at the time they purchased their Class Washing Machines.

188.    Furthermore, as alleged above, Defendant, through pre-product developmental testing, warranty claims submitted to their network of dealers, and customer complaints monitored by Defendant, knew, or, in the exercise of reasonable diligence, should have known, that Class Washing Machines were defectively designed or manufactured, posed a risk, and were not suitable for their intended and/or expected use.

189.    Defendant's affirmative misrepresentations and omissions described herein repeatedly occurred in Defendant's trade or business and were capable of deceiving a substantial portion of the consuming public within the meaning of § 201-2(3) of the UTPCPL.

190.    The facts concealed or otherwise not disclosed by Defendant, as alleged above, constitute material facts, in that Plaintiff McBride and any reasonable consumer would have considered those facts important in deciding whether to purchase Class Washing Machines. Had Plaintiff McBride and other Pennsylvania Class Members known of the Valve Defect, they would not have purchased their Class Washing Machines, or they would have either negotiated additional warranty coverage, negotiated a lower price to reflect the risks posed by the Defect or simply avoided the risk altogether by purchasing different washing machines.

191.    Further, Section 201-2(4)(xiv) of the UTPCPL provides that it shall be unlawful in the sale of goods to fail to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made.

192.    Although Defendant and Defendant's agents were aware of the Valve Defect and its effects at the times Plaintiff McBride submitted his washing machine for servicing, Defendant refused to inspect and/or repair the Class Washing Machine in order to comply with the terms of their written warranty and prevent the damages suffered by Plaintiff McBride.

193.    Plaintiff McBride and other members of the Pennsylvania Class have been damaged as a proximate result of Defendant's violations of the UTPCPL and have suffered damages as a direct and proximate result of having purchased defective Class Washing Machines.

194.    As a direct and proximate result of Defendant's violations of the UTPCPL, as set forth above, Plaintiff McBride and the Pennsylvania Class have suffered and continue to suffer

an ascertainable loss of money and are, therefore, entitled to relief, including damages, plus triple damages, costs and attorney's fees under § 201-9.2 of the statute.

### EIGHTH CAUSE OF ACTION

**VIOLATION OF THE NEW YORK CONSUMER PROTECTION ACT
N.Y. GEN. BUS. LAW § 349**

**[On Behalf of Plaintiff Roberta Schiff and the New York State Class]**

195.     Plaintiffs reallege and reincorporate herein by this reference all of the previous allegations as set forth in full herein.

196.     Plaintiff Schiff brings this putative class action claim against Defendant on behalf of a Class of all residents of New York who are current or former owners and/or lessees of a Class Washing Machine.

197.     The New York Consumer Protection Act ("NYCPA") broadly prohibits the use of "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service…." N.Y. Gen. Bus. Law § 349(a).

198.     In their dealings with Plaintiff Schiff, Defendant omitted the material information concerning the Class Washing Machines in violation of the NYCPA, including the following:

a.     That the Class Washing Machines have a Valve Defect, which presents as loud water hammering when used and which required Plaintiff Schiff to pay out-of-pocket for plumbers and supplies to fix the Valve Defect;

b.     That the Class Washing Machines are affected by the Valve Defect, a defect which was present on delivery and which can result in damage to pipes;

c.     That the Class Washing Machines are incapable of being used safely as the Valve Defect/water hammering can cause damage to the pipes and property of the home; and

45

d.      That the Class Washing Machines were not of a particular standard and were as a result unsafe due to the Valve Defect.

199.    Because Defendant had exclusive knowledge of, and effectively controlled all information concerning, the Valve Defect, Defendant was obligated to disclose this material information to Plaintiff Schiff and Class Members.

200.    Defendant's many deceptive acts and practices were materially misleading because they were likely to deceive a reasonable consumer acting under the circumstances. Due to these unlawful acts and practices, Plaintiff Schiff and Class Members could not have known that the Valve Defect existed, or that it was the proximate cause of their damages.

201.    Defendant engaged in these deceptive acts and practices knowingly and willfully. Defendant, through pre-product developmental testing, warranty claims submitted to Defendant's network of dealers, repair data, and customer complaints monitored by Defendant, knew, or, in the exercise of reasonable diligence, should have known, that Class Washing Machines were defectively designed or manufactured, posed a safety risk, and were not suitable for their intended and/or expected use. Defendant knew or should have known of these risks at the time they serviced Plaintiff Schiff's washing machine or when they failed to inspect and/or repair the Valve Defect.

202.    Defendant's unlawful conduct was consumer-oriented. Defendant engaged in the deceptive acts and practices identified above with the intent to sell, and to induce members of the public to purchase, Class Washing Machines. Moreover, as evidenced by the many complaints Class Members have submitted concerning the Valve Defect, Defendant's conduct has had a broad impact on consumers at large.

203.     Plaintiff Schiff has been injured by Defendant's violations of the NYCPA. But for Defendant's misrepresentations, omissions and deceptive practices, Plaintiff Schiff would not have purchased Plaintiff Schiff's Class Washing Machine or would have paid substantially less for it.

204.     Further, had Defendant disclosed the existence of the Valve Defect, Plaintiff Schiff would not have paid Defendant to repair the Defect and the damage caused by the Defect, and would have instead insisted it be fixed under warranty and without cost.

### NINTH CAUSE OF ACTION

**Violation of Ga. Code Ann. §§ 10-1-390, *et seq*.**

**[On Behalf Of Plaintiff David Low and the Georgia State Class]**

205.     Plaintiffs reallege and reincorporate herein by this reference all of the foregoing paragraphs, above, as though set forth in full herein.

206.     By engaging in the above-described conduct, Defendant perpetrated unfair competition or unfair or deceptive acts or practices in violation of the Georgia Fair Business Practices Act ("GFBPA") of 1975, Ga. Code Ann. §10-1-390, *et seq.* In particular, Georgia law provides, "(a) A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he: . . . (5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . ; . . . (7) Represents that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another; . . . (9) Advertises goods or services with intent not to sell them as advertised." Ga. Code Ann. § 10-1-372.

207.     Georgia law further provides, "(a) Unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are

declared unlawful. (b) By way of illustration only and without limiting the scope of subsection (a) of this Code section, the following practices are declared unlawful: . . . (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have . . . . ; . . . (7) Representing that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another; . . . (9) Advertising goods or services with intent not to sell them as advertised . . . . " Ga. Code Ann. § 10-1-393(a).

208.   Prior to Plaintiff Low's purchase of the Class Washing Machine, Defendant violated the GFBPA by affirmatively misrepresenting that the Class Washing Machines were free from defect in materials or workmanship as contemplated by the Limited Warranty but did not intend to honor the warranty if, like the defect here, it was present during the warranty period but did not manifest itself until after that period.

209.   Additionally, prior to Plaintiff Low's purchase of his washing machine, Defendant violated the GFBPA by making the following material omissions:

a.   That the Class Washing Machines have a Valve Defect, which presents as loud water hammering when used and which required Plaintiff Low to pay out-of-pocket for plumbers and supplies to fix the Valve Defect;

b.   That the Class Washing Machines are unsafe due to the Valve Defect; and/or

c.   That the Class Washing Machines were not of a particular standard and also are unsafe due to the Valve Defect.

210.   Plaintiff Low was exposed to these affirmative misstatements and material omissions through the process of shopping for, and purchasing, Plaintiff Low's Class Washing Machine.  Specifically, Plaintiff Low relied on these affirmative misstatements, such as the claim

that Plaintiff Low's Class Washing Machine was "free from defect" at the point of sale, to conclude, prior to Plaintiff Low's purchase, that the Class Washing Machine was reliable; a fiction, because in fact said Class Washing Machine harbored a hidden defect in the Class Washing Machine which would later cause Water Hammer and subsequent damage.  Such failure would additionally cause Plaintiff Low to pay large amounts of money in repairs to Plaintiff Low's pipes and/or homes.  If Plaintiff Low would have known these facts at the time of purchase, Plaintiff would not have purchased Class Washing Machine, or paid nearly as much for it.

211.   Plaintiff Low reasonably expected that Class Washing Machines would not be defectively designed such that the Class Washing Machine would fail during normal use and cause Water Hammering.

212.   Defendant knew, or, in the exercise of diligence, should have known, the Class Washing Machines were defectively designed or manufactured and were not suitable for their intended and/or expected use.

213.   In failing to disclose the Valve Defect and the associated (potential) repair options and attendant costs, Defendant omitted material facts they were under a duty to disclose to Plaintiff Low.

214.   Defendant's conduct has harmed Plaintiff Low and the general consuming public. The injury to consumers by this conduct greatly outweighs any alleged countervailing benefit to consumers or competition under all of the circumstances.

215.   Had Plaintiff Low known about the Valve Defect at the time of purchase, including monetary cost of repair, Plaintiff Low would not have bought the Class Washing Machine or would have paid much less for it.

216.   As a direct and proximate result of Defendant's actions, Plaintiff Low has suffered ascertainable loss.

**Pre-Suit Notice and Opportunity To Inspect/Repair**

217.   As Plaintiff Low was suffering the Valve Defect / water hammering in his Class Washing Machine, Plaintiff contacted LG, requested that LG fixed his Class Washing Machine, and made his Class Washing Machine available for inspection on or about early 2017.  Despite having knowledge of the Valve Defect, Defendant advised Plaintiff Low to purchase arrestors to fix the problem, knowing that it would not fix the Valve Defect/ Water Hammering in his Class Washing Machine.  Accordingly, within more than thirty (30) days of filing of this Complaint, Defendant LG received pre-suit notice of the Valve Defect / water hammering and a request that Defendants correct, repair, replace or otherwise rectify the above violations for his Class Washing Machine and in affect for all owners of the Class Washing Machine.  Defendant LG has not undertaken to correct, repair, replace or otherwise rectify the Valve Defect / water hammering in Class Washing Machine.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class and, where applicable, the State Classes, pray for judgment against Defendant granting the following relief:

a.   An order certifying this case as a class action and appointing Plaintiffs as representatives of the Class, and appointing Plaintiffs' counsel to represent the Class and any applicable State Classes;

b.   Restitution and disgorgement of all amounts obtained by LG as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

c.     All recoverable compensatory and other damages sustained by Plaintiffs and the Class and any applicable State Classes;

d.     Actual and/or statutory damages for injuries suffered by Plaintiffs and the Class and any applicable State Classes in the maximum amount permitted by applicable law;

e.     An order (1) requiring LG to immediately cease its wrongful conduct as set forth above; (2) enjoining LG from continuing to conceal material information and conduct business via the unlawful, unfair and deceptive business acts and practices complained of herein; (3) ordering LG to engage in a corrective notice campaign; and/or (4) requiring LG to refund to Plaintiffs and all members of the Class and any applicable State Classes the funds paid to LG for the defective Washing Machines;

f.     Statutory pre-judgment and post-judgment interest on any amounts;

g.     Payment of reasonable attorneys' fees, costs and expenses as may be allowable under applicable law; and/or

h.     Such other relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all causes of action so triable.

Dated:  September 11, 2017          By: _____

**CHIMICLES & TIKELLIS LLP**
Benjamin F. Johns
(NJ ID No. 03818-2005)
361 West Lancaster Avenue
Haverford, Pennsylvania 19041
Telephone: (610) 642-8500
Facsimile: (610) 649-3633
Email: bfj@chimicles.com

John Yanchunis
**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
201 North Franklin Street, 7th Floor
Tampa, Florida  33602
Telephone: 813-275-5272
Facsimile: 813-222-4736
Email: jyanchunis@forthepeople.com

Paul C. Whalen, P.C.
**LAW OFFICE OF PAUL C. WHALEN, P.C.**
768 Plandome Road
Manhasset, NY  11030
Tele: (516) 627-5610
F: (212) 658-9685

Francis J. "Casey" Flynn, Jr.
**THE LAW OFFICES OF FRANCIS J. "CASEY" FLYNN, JR., ESQ.**
6220 W. 3rd Street, #115
Los Angeles, California 90036-3173
Telephone: 323-424-4194
Facsimile: 1-855-710-7706
Email: francisflynn@gmail.com

Jasper D. Ward IV
Ashton Rose Smith
**JONES WARD PLC**
The Pointe
1205 E. Washington St., Suite 111
Louisville, Kentucky 40206
Telephone: (502) 882-6000
Facsimile: (502) 587-2007
Email:    jasper@jonesward.com
          ashton@jonesward.com

*Attorneys for Plaintiffs*